UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
HARRY CATTON, PHILLIP MARKS,  :
STEPHEN KEVELSON, JOHN        :
SCOTTO, ERIK KAHN, ROBERT     :           **MEMORANDUM**
WISSENBACH, AND JOHN DOES 1-10, :         **OPINION AND ORDER**
                              :
         Plaintiffs,          :           05 Civ. 6954 (SAS)
                              :
    - against -               :
                              :
DEFENSE TECHNOLOGY SYSTEMS,   :
INC., JOHN BRADY, EDWARD      :
McPHEE, DANIEL McPHEE, AND    :
PHILLIP RAUSCH,               :                    11/15/07
                              :
         Defendants.          :
                              :
------------------------------------------------------- X
SHIRA A. SCHEINDLIN, U.S.D.J.:

I.   INTRODUCTION

   In the course of discovery, defendants have asserted that

communications between attorney Frank Hariton and officials of Defense

Technology Systems, Inc. ("the Company") are shielded by the attorney-client

privilege.[1] Plaintiffs now move to compel Hariton to testify to

certain communications based on the crime-fraud exception to the attorney-client

---

   [1]   *See* 10/1/07 Deposition of Frank Hariton ("Hariton Dep."), Ex. C to
Notice of Motion, at 4, 7-9.

1

privilege.

## II. BACKGROUND[2]

Under federal law, securities acquired from a company other than pursuant to a registered public offering are considered "restricted" securities. Securities held by or acquired from a person affiliated with the issuer automatically become restricted securities. Restricted securities are marked with a legend that states they cannot be transferred except pursuant to a registered offering or an exception to the registration requirements. The most common exception is Rule 144, which provides that restricted securities can be transferred provided they have been held for a certain period of time, the amount of securities sold does not exceed one percent of the total amount of outstanding securities, and various technical requirements are met.[3] However, Rule 144(k) provides that restricted securities may be sold without regard to these conditions if the securities have been held by non-affiliates for at least two years.[4]

---

[2] This Opinion assumes familiarity with the underlying action and discusses only those facts material to the matter at hand.

[3] *See* General Rules and Regulations, Securities Act of 1933, 17 C.F.R. § 230.144.

[4] *See* Securities and Exchange Commission, *Rule 144: Selling Restricted and Control Securities* (Oct. 6, 2003), http://www.sec.gov/investor/pubs/rule144.htm ("SEC, Rule 144").

2

Even if the requirements of Rule 144(k) are met, a transfer agent must remove the restrictive legend from the securities before they are transferred.[5] Transfer agents typically require an opinion letter from a securities attorney that states the legend may be removed.[6] Because the legend must remain if the securities are transferred to an affiliate, in issuing this letter the securities attorney will normally rely on a representation from the transferee that it is not an affiliate of the company.[7]

Plaintiffs allege that as part of a fraudulent scheme, and with the intention of placing unrestricted shares into the hands of the Company's affiliates, defendants knowingly made false representations to Hariton to induce him to issue opinion letters that stated the restrictive legend could be removed.[8] At his deposition in this action, Hariton stated that on October 7, 2003, he issued such a letter in connection with a transfer of shares to Schanz, Brady, and McPhee, but was not informed that Schanz was Chairman of the Company's advisory board, Brady was engaged in promoting the Company, and McPhee had certain

---

[5] *See id.*

[6] *See* Hariton Dep. at 19.

[7] *See id.* at 21, 48.

[8] *See* Memorandum of Law in Support of Plaintiffs' Motion to Invoke the Crime-Fraud-Tort Exception to the Attorney Client Privilege at 6.

3

connections with the Company, and thus all three were possibly affiliates (and therefore governed by the transfer restrictions).[9] Hariton claims he may not have issued opinion letters in certain transactions if he had known of the affiliations.[10]

Further, Hariton's opinion letters stated that the Company was in good standing.[11] Hariton claims to have based this statement on representations received from the Company.[12] However, plaintiffs have cited to evidence indicating that the Company was not in good standing at that time because of non-payment of taxes.[13]

Over the course of his relationship with the Company, Hariton states that he became uneasy regarding the preparation of opinion letters for the Company.[14] He also concedes that it was possible that misrepresentations were

---

[9] *See* Hariton Dep. at 19-25, 48, 66, 91, 94, 101-102.

[10] *See id.* at 65-66, 114.

[11] *See, e.g.,* 1/20/04 Opinion Letter, Ex. I to 10/12/07 Certification of Attorney Nicole V. Barbaro ("Barbaro Cert."), attorney for plaintiffs.

[12] *See* Hariton Dep. at 123.

[13] *See* 7/7/04 Certificate for Renewal and Revival of Charter, Ex. G to Barbaro Cert.

[14] *See* Hariton Dep. at 126.

4

made.[15]

## III. APPLICABLE LAW

Attorney-client privilege "is one of the oldest recognized privileges for confidential communications."[16] The privilege, designed to "encourage full and frank communication between attorneys and their clients," protects from discovery both advice given by the attorney and communications from the client to the attorney that are made in facilitation of or in pursuit of the provision of legal services.[17] "The broad outlines of the attorney-client privilege are clear: '(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.'"[18] The party asserting the attorney-client privilege must demonstrate

---

[15] *See id.* at 102.

[16] *Swidler Berlin v. United States*, 524 U.S. 399, 403 (1998).

[17] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

[18] *United States v. International Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997).

5

these elements.[19]

However, "when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal . . . criminal activity," the privilege does not apply.[20] This crime-fraud exception "require[s] that there be (i) a determination that 'the client communication or attorney work product in question was itself in furtherance of the crime or fraud' and (ii) 'probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity.'"[21] "A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime."[22] The exception does not apply where the communication merely provides evidence of a

---

[19] *See In re Grand Jury Subpoena Dated Dec. 19, 1978*, 599 F.2d 504, 510 (2d Cir. 1979).

[20] *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 33 (2d Cir. 1986).

[21] *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (quoting *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995)).

[22] *United States v. Jacobs*, 117 F.3d 82, 87 (2d Cir. 1997).

6

crime or fraud.[23] Rather, the communication "must actually have been made with an intent to further an unlawful act."[24]

## IV. ANALYSIS

To overcome defendants' attorney-client privilege, plaintiffs need only demonstrate probable cause to believe that defendants committed a fraud and that their communications to Hariton were intended to further this fraud. Defendants claim that plaintiffs have not met their burden of proof.[25] I disagree. Hariton's deposition testimony and the affidavits submitted by plaintiffs indicate that there is probable cause to believe defendants made false representations to Hariton to obtain opinion letters in furtherance of a fraudulent scheme.[26]

Plaintiffs have produced no evidence to show that defendants used

---

[23] *See Richard Roe*, 68 F.3d at 40.

[24] *Jacobs*, 117 F.3d at 88 (quoting *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989)).

[25] *See* Memorandum of Law in Opposition to Plaintiffs' Motion to Invoke the Crime-Fraud Exception to the Attorney Client Privilege, at 3-4.

[26] Plaintiffs argue that the evidence indicates Hariton's opinion letters were used for several other fraudulent or illegal purposes, including the orchestration of "matched orders" and the use of securities as "currency" in an effort to evade laws that regulate issuances of securities. *See* Hariton Dep. at 98-99. Because I have determined that there is probable cause to believe defendants communicated with Hariton with the intent of furthering a scheme of illegal transfers, I need not reach these additional arguments.

Hariton's advice to further any fraudulent scheme in any manner other than to obtain opinion letters. Thus, the crime-fraud exception applies only to those otherwise privileged communications between defendants and Hariton that pertain directly to the provision of opinion letters issued in connection with transfers of Company securities.

## V. CONCLUSION

For the reasons set forth above, the crime-fraud exception to the attorney-client privilege applies to communications between defendants and Hariton that were intended to provide a basis for Hariton to issue opinion letters in connection with transfers of Company securities. As a result, such communications must be promptly disclosed to plaintiffs. A failure to do so may result in sanctions pursuant to Rule 37. The deadline for concluding discovery is hereby extended to December 31, 2007, provided that additional discovery is limited to those matters directly related to the communications that I now rule are not shielded by attorney-client privilege. The Clerk of the Court is directed to close this motion (Document # 68).

SO ORDERED:

Shira A. Scheindlin,
U.S.D.J.

Dated: New York, New York
November 14, 2007

9

## – Appearances –

**For Plaintiffs:**

Richard Salvatore Ciacci, Esq.
Mathew E. Hoffman, Esq.
Todtman, Nachamie, Spizz & Johns, P.C
425 Park Avenue
New York, NY 10022
(212) 754-9400

**For Defendants Defensen Technology Systems Inc., Daniel McPhee, and Phillip Rausch:**

David Hirschberg, Esq.
Burkhart, Wexler & Hirschberg LLP
585 Stewart Venue, Suite 750
Garden City, NY 11530
(516) 222-2230

**For Defendant John Brady:**

Eric S. Hutner, Esq.
Hutner Klarish, LLP
1359 Broadway, Suite 2001
New York, NY 10018
(212) 981-9121

**For Defendant Edward McPhee:**

| | |
|---|---|
| Eric S. Hutner, Esq. | Robert Beale McKay, Esq. |
| Hutner Klarish, LLP | Carney & McKay |
| 1359 Broadway, Suite 2001 | 1140 Franklin Avenue |
| New York, NY 10018 | Garden City, NY 11530 |
| (212) 981-9121 | (516) 248-0466 |